IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AVERY JUREK, on behalf of herself and all others similarly situated,<br>　　　　Plaintiff | : : : : | No. 1:24cv408<br><br>(Judge Munley) |
| v. | : : | |
| DICKINSON COLLEGE,<br>　　　　Defendant | : : | |

............................................................................................................

## MEMORANDUM

Before the court is Defendant Dickinson College's motion to dismiss Plaintiff Avery Jurek's putative class action complaint. This matter concerns Dickinson's transition to online classes during the spring 2020 semester as the COVID-19 pandemic led to college campus closures across the Commonwealth of Pennsylvania. The parties have briefed their positions and the motion is ripe for a decision.

## Background[1]

Dickinson College ("Dickinson") is a private liberal arts college in Carlisle, Cumberland County, Pennsylvania. (Doc. 1, Compl. ¶ 16). Plaintiff Avery Jurek, a Massachusetts resident, was an undergraduate student enrolled in Dickinson's

---

[1] These background facts are derived from plaintiff's complaint. At this stage of the proceedings, the court must accept all factual allegations as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)(citations omitted). The court makes no determination, however, as to the ultimate veracity of these assertions.

on-campus, in-person education program during the spring 2020 semester. (Id. ¶¶ 14–15, 27). Jurek alleges that Dickinson charged $28,249.00 in tuition and fees for the spring 2020 semester. (Id. ¶ 23).

In March 2020, and in response to the COVID-19 pandemic, Dickinson transitioned to remote, online-only education and cancelled on-campus recreational and student activity events. (Id. ¶ 5). Dickinson closed its campus and ordered students out of the residence halls. (Id. ¶¶ 22, 30). Thus, for the remainder of the spring 2020 semester, no on-campus education, services, and amenities were available to students. (Id. ¶ 6).

Per the complaint, Dickinson students lost the services and experience for which they had paid. (Id. ¶ 8). Although Dickinson provided prorated refunds for residence hall charges and dining hall plans, the college refused to refund a portion of tuition and fees related to on-campus education, services, and amenities even though they were not available to students for a significant part of the spring 2020 semester. (Id. ¶ 7, 33).

Based upon these allegations, Jurek filed the instant complaint with claims for breach of implied contract and unjust enrichment. (Id. at ¶¶ 54-73). Jurek seeks to bring the complaint on her behalf and on behalf of all similarly situated Dickinson students enrolled during the spring 2020 semester. (Id. ¶¶ 44-53).

In response to the Jurek's complaint, Dickinson filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 15). The parties have filed briefs in support of their respective positions, bringing the case to its present posture.

**Jurisdiction**

Plaintiff bases jurisdiction upon 28 U.S.C. § 1332(d), as modified by the Class Action Fairness Act of 2005 ("CAFA"). "CAFA confers on district courts 'original jurisdiction of any civil action' in which three requirements are met: (1) an amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) that the class consist of at least 100 or more members[.]" Judon v. Travelers Prop. Cas. Co. of Am., 773 F.3d 495, 500 (3d Cir. 2014)(citing 28 U.S.C. § 1332(d)(2), (d)(5)(B), (d)(6); Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 590 (2013)).

Minimal diversity exists where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). In this matter, at least one member of the proposed class, Jurek, is a citizen of a different state, Massachusetts, from the state of Dickinson's citizenship, Pennsylvania.

As for the numerosity requirement, plaintiff alleges that "thousands" of undergraduate students were enrolled in-person and on campus during the

spring 2020 semester. (Doc. 1, Compl. ¶ 47). Thus, there are more than 100 members of the putative class.

Regarding the amount in controversy, plaintiff seeks a *pro rata* refund of tuition and mandatory fees that she and other class members paid Dickinson for the portion of the spring 2020 semester after classes moved online and campus classrooms and facilities were closed. (Id. ¶ 43). Based on the allegation that "thousands" of undergraduates were enrolled for the spring 2020 semester and that a half-semester of education at Dickinson cost in excess of $14,000, the amount in controversy requirement is satisfied on the basis of plaintiff's averments as aggregated across all individual claims.

**Legal Standard**

Dickinson has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

On a motion to dismiss for failure to state a claim, district courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Phillips, 515 F.3d at 233 (citations omitted).

**Analysis**

Dickinson's arguments to dismiss Jurek's action can be boiled down to three main points: 1) her breach of implied contract and unjust enrichment claims fail due to a written contract between the parties; 2) the complaint does not contain a plausible implied contract claim; and 3) Dickinson's actions are excused under the unprecedented circumstances of COVID-19. Dickinson's arguments to dismiss Jurek's claims are not unique. See Camden v. Bucknell Univ., No. 4:23cv1907, 2024 WL 760232, at *2 (M.D. Pa. Feb. 23, 2024)(Brann, J.). Since the Third Circuit Court of Appeals decided Hickey v. Univ. of Pittsburgh, 81 F.4th 301, 307 (3d Cir. 2023) last September, judges in this district have addressed arguments substantially similar to Dickinson's on motions to dismiss filed by other colleges and universities. Each time, the plaintiffs' implied

contract and unjust enrichment claims survived the motion. See Camden, 2024 WL 760232, at *2-*7; Nouri v. Univ. of Scranton, No. 3:23cv1362, 2024 WL 3871804, at *2-*10 (M.D. Pa. Aug. 19, 2024)(Mehalchick, J.); Dantone v. King's Coll., No. 3:23cv1365, 2024 WL 3993239, at *2-*6 (M.D. Pa. Aug. 29, 2024). Nonetheless, the court will address Dickinson's three arguments in turn.

### 1. Existence of Written Agreements

Like all of the other campus COVID-19 closure cases, Dickinson argues that Jurek's breach of implied contract and unjust enrichment claims must fail because of a written agreement between the parties. In their reply brief, Dickinson attempts to distinguish Hickey and break away from the pack by attaching its Financial Responsibility Agreement ("FRA"), Tuition Refund Policy, Spring 2020 Academic Bulletin, and 2019-2020 Student Handbook to the motion to dismiss and referring to those documents as the parties' express agreement.

Dickinson's written contract arguments raise two issues at this posture. First, courts may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record[.]" Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)(citations omitted). A court may also properly consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Id.(citations

omitted). Additionally, "a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)(citation omitted, internal quotation marks and brackets removed)(emphasis in original). Jurek, however, filed her complaint without exhibits. Her implied contract allegations only refer to Dickinson's electronic course catalog, marketing materials, bulletins, and website. (Doc. 1, Compl. ¶¶ 24, 57). Under the above standard, it would be procedurally improper for the court to consider the FRA, Tuition Refund Policy, and 2019-2020 Student Handbook without converting the motion to dismiss to a motion for summary judgment. Neither party has made such a request and the court will not do so *sua sponte*.[2]

Second, the existence of express contracts regarding tuition and fee obligations in the ordinary course of registration does not preclude on-campus, in-person students impacted by COVID-19 closures "either from asserting breach of an implied contract based on an alleged university obligation (to provide in-person classes and services) not addressed in the [express contracts], or from

---

[2] Albeit in footnoted dicta after determining that the plaintiffs failed to properly raise the argument, the Hickey panel called consideration of FRAs "likely erroneous" on a similar motion to dismiss. 81 F.4th at 308, n. 5.

seeking damages in the form of a partial tuition or fee refund." Hickey, 81 F.4th at 310.

As for the dueling unjust enrichment claim, the Federal Rules of Civil Procedure permit such claims to be pled in the alternative where the existence or applicability of an express or implied contract is in dispute. Id. at 315–16 (citing FED. R. CIV. P. 8(d)(3)). Jurek's complaint avers facts supporting the elements of an unjust enrichment claim as a secondary possible means of recovery. Accordingly, Dickinson's arguments to dismiss Jurek's complaint based on a written contract fall short at this stage.

**2. Whether Plaintiff Has Pled a Plausible Implied Contract Claim**

Dickinson also argues that the alternative sources of the implied contract, i.e., the marketing materials, bulletins, and website content, that were used to solicit students do not establish contract terms between the parties that could have been breached. Dickinson further advances that plaintiff has not alleged cognizable damages. The court considers these arguments together as a typical challenge to the plausibility of plaintiff's implied contract claim.

Hickey and the other district court decisions have already blazed this trail. In Hickey, the Third Circuit concluded that the plaintiffs plausibly pled the existence of an implied contract to provide in-person, on-campus instruction premised on three university practices: "(1) the Universities' publications touting

8

the benefits of the 'on-campus experience'; (2) their longstanding pre-pandemic tradition of in-person education; and (3) the separate marketing and pricing of online and in-person programs." 81 F.4th at 312.

Here, Jurek's complaint advances ample allegations regarding the first two of these practices. (See Doc. 1, Compl. ¶ 25 ("Dickinson also markets its campus and community and to its students specifically, Dickinson highlights the community ideals that set Dickinson apart from other institutions.") ¶¶ 3, 16, 24 (averments regarding Dickinson's private, liberal arts on-campus programs dating back to the end of the Revolutionary War)).[3] Read in context with the rest of Jurek's complaint, she has sufficiently averred facts that the parties had an implied contract for in-person education and that the contract was breached.[4] Hickey, 81 F.4th at 314.

---

[3] Dickinson's brief in support bolsters these allegations: "Dickinson College is a premier four-year liberal-arts institution chartered in 1783 and widely recognized as a leader in sustainability and global education. Since 1783, Dickinson has prepared graduates to face real world challenges so they are equipped, wherever and by whatever means, to collaborate with others and succeed." (Doc. 19 at 6).

[4] Unlike the universities in Hickey and some of the other district court decisions, there are no allegations here that Dickinson offered online undergraduate courses at a separate pricing structure. That is of no moment in this case. See Dixon v. Lincoln Univ., No. 24cv1057, 2024 WL 4156837, at *5, n. 8 (E.D. Pa. Sept. 10, 2024)(Marston, J.)(determining that a plaintiff stated a plausible implied contract claim even where the complaint did not allege that there was a cheaper online education program available); see also Dantone, 2024 WL 3993239, at *4, n. 1 (M.D. Pa. Aug. 29, 2024)(determining that a plaintiff did not need to plead that online courses at a college cost less than in-person courses to assert a proper implied contract claim pursuant to Hickey).

Jurek has also alleged cognizable damages. Under Pennsylvania law, "damages are speculative 'only if the uncertainty concerns the *fact* of damages, rather than the *amount*.' " Id., 81 F.4th at 316 (quoting Pashak v. Barish, 450 A.2d 67, 69 (Pa. Super. Ct. 1982))(emphasis in original)(additional citation omitted). Here, Jurek seeks to recover the difference in value between the in-person education that the parties bargained for and the online education that she received instead. (See Doc. 1, Compl. ¶¶ 13, 35–40). Per the allegations, this includes the loss of different benefits that come with in-person education, as well as access to university services and facilities that were not available while Dickinson's campus was closed. (Id. ¶¶ 23, 28–29). Jurek has thus plausibly alleged that she and the putative class have sustained some damages in an amount that could become clearer as the case proceeds.

### 3. Excuses to Performance

Finally, Dickinson advances that "although any promises to provide in-person services are denied, even if they existed, Dickinson was excused as a matter of law from providing educational services in that manner" based on supervening impracticability and prevention by governmental orders. (Doc. 19, Br. in Supp. at 18–19). Jurek counters that such impracticability or impossibility defenses are premature and ultimately do not permit Dickinson's retention of tuition and fees. (Doc. 22, Br. in Opp. at 16).

Jurek's arguments in this matter follow the other district courts' decisions. The clear consensus from these cases is that arguments like Dickinson's raise questions of fact that are matters for another day. Camden, 2024 WL 760232, at *3; Nouri, 2024 WL 3871804, at *6-*8; Dantone, 2024 WL 3993239, at *5. Moreover, even if a breach of an implied contract is ultimately excused, defendant may have to pay damages in the form of restitution. Nouri, 2024 WL 3993239, at *7 (citations omitted).

**Conclusion**

For the reasons set forth above, Dickinson's motion to dismiss will be denied. An appropriate order follows.

Date: 10/21/24

JUDGE JULIA K. MUNLEY
United States District Court