**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AVERY JUREK, on behalf of herself and all others similarly situated,** **Plaintiff** | : | **No. 1:24cv408** |
| | : | **(Judge Munley)** |
| **v.** | : | |
| **DICKINSON COLLEGE,** **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Dickinson College shifted from in-person to remote classes in March 2020 due to COVID-19. Plaintiff Avery Jurek was one of Dickinson's undergraduate students impacted by that shift. Dickinson partially refunded her room and board for the latter half of the spring semester but did not partially refund tuition and mandatory fees. To recover tuition and fees from her alma mater for that half-semester, Jurek filed this putative class action asserting state law claims for breach of implied contract and unjust enrichment. Following discovery, Dickinson believes that the undisputed facts warrant summary judgment in its favor. Upon review, Dickinson is half right. Dickinson's motion for summary judgment will be denied as to Jurek's breach of implied contract claim and granted as to her unjust enrichment claim. Jurek's expert reports and class certification motion will be due in two weeks.

**Background**

Avery Jurek grew up in Maine.[1] (Doc. 58-1, Def. Ex. 1, Pl. Dep., 7:22-23).[2] She began her college search in 2017, during her junior year in high school. Id., 20:20–21:2. She "was looking for a good psychology or neuro program, smaller school . . . smaller professor to student ratio, smaller class sizes, [and] smaller campus[.]" Id., 21:22–22:6. She sought out a school "more involved with the community" — a school that was "very much in the town or part of the town they were in." Id., 22:4-5.

---

[1] Unless otherwise noted, this factual background derives from the paragraphs of Dickinson's statement of material facts ( "SOF"), (Doc. 58), filed pursuant to the Rules of Court for the Middle District of Pennsylvania ("Local Rules"), which were either explicitly admitted by the plaintiff in her response to the SOF ("RSOF"), (Doc. 61), or are uncontroverted. Where plaintiff failed to controvert a properly supported factual assertion in Dickinson's SOF, the court deems that fact admitted. FED. R. CIV. P. 56(e); M.D. PA. L.R. 56.1. The court construes all facts in a light most favorable to Jurek as the non-moving party. Daniels v. Sch. Dist. of Philadelphia, 776 F.3d 181, 187 (3d Cir. 2015).

[2] Dickinson electronically filed Jurek's deposition transcript and deposition exhibits in support of its motion for summary judgment. (Doc. 58-1). That document contains 936 pages of transcript and exhibits. Unless referring to the plaintiff's deposition transcript, the court will use "(Doc. 58-1, DICKINSON _____, ECF p. ___)" to cite to specific pages of this combined filing.

Dickinson College is a private liberal arts college in Carlisle, Pennsylvania. (Doc. 58, SOF ¶ 4). When Jurek was researching colleges and universities, Dickinson sent her various admissions-related materials. (Doc. 58-1, Pl. Dep., 22:7–23:8, 25:25–26:15). During her deposition in this case, Jurek was presented with materials from the college like the ones she would have received prior to matriculation. Id., 29:7–31:4. Those materials included the following:

Being here is about being you.

College is about more than classes, majors and GPAs.

It's about more fully becoming who you are. Through intensive study, collaboration with faculty, interaction with peers and late nights with friends, Dickinsonians emerge from their comfort zones with experiences, adventures and relationships that shape their perceptions, build their skill sets and expand their worldviews.

**It's about embracing every season that life has to offer. It's about being present, being brave, being open, being here, being you.**

Id., DICKINSON 0002242, ECF p. 145.[3]

The last page of one of the defendant's booklets also features the following copy:




Id., DICKINSON 0002214, ECF p 193.

Jurek visited Dickinson after being accepted for admission. (Doc. 58-1, Pl. Dep., 22:7–23:8, 25:25–26:15). She toured the campus, visited all the academic and extracurricular buildings, and participated in an admission session. Id., 22:7–23:8. An admissions counselor talked about life on campus, academic expectations, and financials. Id., 39:19–40:5. Jurek ultimately chose Dickinson

[3] This document is from 2021. Nonetheless, Dickinson cites to these materials in the statement of facts supporting its motion for summary judgment. (Doc. 58, SOF ¶ 8 ("Plaintiff did not receive any other material prior to admission from Dickinson that were different in nature from the materials contained at DICKINSON 0002216–0002243; DICKINSON 0002168–0002215.")).

over other schools in Maryland and California based on her visit to campus. Id., 25:3–26:15.

Jurek enrolled at Dickinson for the Fall 2018 semester. Id., 43:8-14. She signed an acceptance letter. (Doc. 58, SOF ¶ 14). She also signed a financial responsibility acknowledgment from the college. Id.

For the Spring 2020 semester, Jurek was enrolled in Dickinson's on-campus, in-person education program. Id. ¶ 1. She had declared a major in psychology and a minor in women's, gender, and sexuality studies. (Doc. 58-1, Pl. Dep., 48:21–50:2). Jurek worked with a professor in those departments to create an independent study program. Id. She was also a member of a sorority at the college. Id. 88:23–89:4. Additionally, she played club sports. Id., 70:20-23.

Dickinson's Spring 2020 semester was scheduled to run from January 2020 to May 2020. (Doc. 58, SOF ¶ 22). The events of March 2020 marked a significant shift in routines.

On Tuesday, March 10, 2020, Dickinson was on spring break. Id. ¶ 23. That day, the college sent an email to its students, staff, and faculty notifying them that the break would be extended for an additional week because of COVID-19. Id. By Monday, March 16, 2020, Dickinson announced a transition to remote education for that semester due to the pandemic. Id. ¶ 24. On March

18, 2020, Dickinson President Margee M. Ensign emailed students advising that room and board charges would be refunded, but tuition would not be refunded because the college would be continuing its academic programs. (Doc. 58-1, DICKINSON 0013475–76, ECF pp. 934–35).

Jurek then attended classes using Zoom. Id., Pl. Dep. 90:19-25. She ultimately received full credit for the courses she completed during the Spring 2020 semester. (Doc. 58, SOF ¶ 36).

The Fall 2020 semester was also completely remote. Id. ¶ 39. Dickinson then offered students the option to return to campus for the Spring 2021 semester. Id. ¶ 45. Jurek chose to continue taking remote classes and did not return to campus that semester. Id. ¶ 46. She also attended remote classes during the 2021 Summer Session. Id.

Jurek returned to campus for the Fall 2021 semester, her senior year. Id. ¶ 49. She graduated within eight semesters. Id. ¶ 50.

During her deposition, Jurek complimented Dickinson on its library, gym, and farm-to-table dining hall, but she does not believe she received what she paid for when she chose Dickinson for her undergraduate education. (Doc. 58-1, Def. Ex. 1, Pl. Dep., 11:22–12:3, 14:25–15:5, 52:17–53:11). In reviewing the above-referenced admissions materials, she testified:

> [Q.] What promises in the literature do you find that you believe were made and broken?

> A. I mean, you can see it in all the photos that they are putting in these brochures, that it's very much a campus centered experience. I mean, it makes me miss it to look at these photos because I have a personal experience associated with all of the buildings that are in here and all of the things that they're discussing, like studying abroad and the different resources that are on campus. And they're showing you that you are going to experience this when you're at Dickinson, and I don't feel as though I or my peers received that.

Id., 31:11-25.

During the relevant time, Dickinson tuition was $27,974 per semester. (Doc. 58, SOF ¶ 40).

On March 7, 2024, Jurek filed a two-count class action complaint for breach of implied contract and unjust enrichment.[4] (Doc. 1). Her complaint proposes a

[4] Plaintiff bases jurisdiction upon 28 U.S.C. § 1332(d), as modified by the Class Action Fairness Act of 2005 ("CAFA"). "CAFA confers on district courts 'original jurisdiction of any civil action' in which three requirements are met: (1) an amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) that the class consist of at least 100 or more members[.]" Judon v. Travelers Prop. Cas. Co. of Am., 773 F.3d 495, 500 (3d Cir. 2014) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B), (d)(6); Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 590 (2013)). Minimal diversity exists where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). In this matter, at least one member of the proposed class, Jurek, is a citizen of a different state, the Commonwealth of Massachusetts, from the state of Dickinson's citizenship, the Commonwealth of Pennsylvania. (Doc. 58, SOF, ¶¶ 1, 5). As for the numerosity requirement, plaintiff alleges that "thousands" of undergraduate students were enrolled in-person and on campus during the spring 2020 semester. (Doc. 1, Compl., ¶ 47). Thus, there are more than 100 members of the putative class. Regarding the amount in controversy, plaintiff seeks a *pro rata* refund of tuition and mandatory fees that she and other class members paid Dickinson for the portion of the spring 2020 semester after classes moved online and campus classrooms and facilities were closed. Id. ¶ 43. Based on the allegation that "thousands" of undergraduates were enrolled for the spring 2020 semester and that a half-

class defined as: "[a]ll Dickinson College students who satisfied their payment obligations for the Spring Semester 2020 tuition and/or Mandatory Fees and enrolled in at least one in-person on-campus class[.]" Id. ¶ 44. With her action against Dickinson, Jurek seeks to recover the difference in value between the in-person education that the parties allegedly bargained for and the online education that she received instead. See id. ¶¶ 13, 35–40. Per the allegations, this includes the loss of different benefits that come with in-person education, as well as access to university services and facilities that were not available while Dickinson's campus was closed. Id. ¶¶ 23, 28–29.

Dickinson initially moved to dismiss Jurek's complaint. The court denied Dickinson's motion, relying primarily on the Third Circuit's decision in Hickey v. Univ. of Pittsburgh, 81 F.4th 301 (3d Cir. 2023). (Docs. 24–25). After a period of discovery, Dickinson College filed a motion for summary judgment. (Doc. 57).

On the unjust enrichment claim, Hickey compels the entry of summary judgment in Dickinson's favor. But based on its arguments in support of its motion, Dickinson is not entitled to summary judgment on the breach of implied contract claim.

---

semester of education at Dickinson cost more than $14,000, the amount in controversy requirement is satisfied from plaintiff's averments as aggregated across all individual claims.

**Standard of Review**

A movant is entitled to summary judgment "when there is no genuine issue of material fact in the case and the moving party is entitled to judgment as a matter of law." Reedy v. Evanson, 615 F.3d 197, 210 (3d Cir. 2010) (citation omitted); see also FED. R. CIV. P. 56(a). "A fact is material if its resolution 'might affect the outcome of the suit under the governing law,'. . . [a]nd a dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Mall Chevrolet, Inc. v. Gen. Motors LLC, 99 F.4th 622, 631 (3d Cir. 2024) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

At this stage, the judge's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. All "facts in dispute," Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 187 (3d Cir. 2015), and all "inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up). "[W]hen there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." Peterson v. Lehigh Valley Dist. Council, United Bhd. of Carpenters & Joiners, 676 F.2d 81, 84 (3d Cir. 1982).

Furthermore, "a court's role remains circumscribed in that it is inappropriate for a court to resolve factual disputes and to make credibility determinations." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) (citation omitted). "[W]here the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Id. (citations omitted).

A motion for summary judgment may also be granted where a moving party demonstrates that the nonmoving party "has not made 'a showing sufficient to establish the existence of an element essential to that party's case . . . on which that party will bear the burden of proof at trial.'" Mall Chevrolet, Inc., 99 F.4th at 630 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (emphasis removed)). After a moving party carries their burden to show the absence of a genuine, material factual dispute, Rule 56 flips the burden onto "the nonmovant to 'go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" Daubert v. NRA Grp., LLC, 861 F.3d 382, 391 (3d Cir. 2017) (quoting Celotex Corp., 477 U.S. at 324 (emphasis removed) (alteration in original)). The non-moving party must "do more than 'simply show that there is some metaphysical doubt as to the material facts.' " Id. (quoting Matsushita, 475 U.S. at 586).

Sitting in diversity, the court applies Pennsylvania law to plaintiff's claims. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Analysis**

**1. Jurek Has Evidence of an Implied Contract and a Breach by Dickinson**

Jurek's first state law claim is for breach of an implied contract. A breach of contract claim is proven by establishing 1) the existence of a contract, including its essential terms; 2) a breach of the contract; and 3) resultant damages. Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016). The type of contract asserted in this case is an implied-in-fact contract. Such contracts "arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract." Hertzog v. Hertzog, 29 Pa. 465, 468 (1857). They arise "where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from their acts in the light of the surrounding circumstances." Cameron v. Eynon, 3 A.2d 423, 424 (Pa. 1939). Moreover, with such contracts, an offer and acceptance "need not be identifiable and the moment of formation need not be pinpointed." Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 942 (Pa.

Super. Ct. 2011), aff'd, 106 A.3d 656 (Pa. 2014) (citing Ingrassia Constr. Co. v. Walsh, 486 A.2d 478, 483 (Pa. Super. Ct. 1984)).

Jurek claims that Dickinson College agreed to, among other things, provide an in-person and on-campus educational experience as well as the services and facilities covered by the mandatory fees throughout the Spring 2020 semester when plaintiff paid tuition and fees prior to that semester beginning. (Doc. 1, Compl. ¶ 56). As a result, plaintiff asserts that she entered into a binding implied contract with Dickinson for that experience, not remote learning, in accordance with the college's marketing materials, history, and prior course of on-campus education. Id., ¶¶ 56–57. Jurek contends that Dickinson breached this contract by failing to provide the promised in-person and on-campus educational experience for the duration of the Spring 2020 semester. Id., ¶ 60.

Dickinson assumes, at least for summary judgment purposes, that the parties' relationship was governed by an implied contract as Jurek alleges. (Doc. 59, Def. Br. in Supp. at ECF p. 9). But Dickinson also takes the position that plaintiff has no evidence supporting her allegations that there was a promise by the college to provide an on-campus, in-person college experience. Id. at ECF p. 11–12.

With respect to cases like this, Pennsylvania law does not preclude breach of contract claims by students against colleges and universities for "specific

promises their universities broke—even if those promises have not been reduced to writing." Hickey, 81 F.4th at 311. Pennsylvania law also recognizes that "students may bring breach of contract claims for 'specific undertakings' that a university promised but failed to deliver, such as a certain curriculum, accreditation, or degree." Id. (citing Cavaliere v. Duff's Bus. Inst., 605 A.2d 397, 404 (Pa. Super. Ct. 1992); Gati v. Univ. of Pittsburgh of Com. Sys. of Higher Educ., 91 A.3d 723, 731 (Pa. Super. Ct. 2014); McCabe v. Marywood Univ., 166 A.3d 1257, 1262 (Pa. Super. Ct. 2017)).

Mindful of claims based on "specific promises" and "specific undertakings," Jurek has responded to Dickinson's summary judgment motion with evidence of the college's promise of an in-person on-campus educational experience in a certain atmosphere, developed through the college's rich history and prior course of providing that experience. This atmosphere is distilled into the college's admissions materials supplied in conjunction with this motion: there are dozens of images of Dickinson's campus in all seasons, students gathered on various campus spaces, and a cascade of scenes building toward a certain shared curricular and co-curricular experience. (Doc. 58-1, DICKINSON 0002168–2243, ECF pp. 119–94). The materials tout Dickinson's various academic and non-academic accolades, such as its number one ranking in a sustainable campus index in 2018, its 99 green rating in the Princeton Review's green honor roll, and

its ranking of "No. 6 Coolest School" for its sustainability efforts by Sierra magazine. Id., DICKINSON 0002174, 0002194, ECF pp. 153, 173. Defendant featured its campus location in Carlisle as a "Nationwide 2016 Strongest Town Contest Winner," and recipient of a "2016 Best College Towns in America" award in the supplied materials. Id. DICKINSON 0002181, ECF p. 160. These materials also emphasized more than just peer connections at Dickinson:




Id. DICKINSON 0002205, ECF p. 184.

Jurek has further responded to summary judgment with admissions found within the testimony of Dickinson's witnesses. As Dickinson's corporate representative testified, students paid tuition and fees prior to the start of the Spring 2020 semester with the expectation that they would receive all of the college's performance obligations on campus. (Doc. 60-2, D. Walker Dep. 112:6–113:5). He agreed that those students did not get the full benefit of the

out-of-classroom experience. Id. 114:16-19. He agreed that students did not receive the full benefit of the bargain in exchange for payment of their tuition and fees. Id., 115:16-22. Further, to the extent that Dickinson relies on its financial responsibility statement as all or part of the contract terms between the parties, its assistant vice president for financial operations testified that the agreement was premised on the college providing an on-campus education. (Doc. 60-3, S. Witte Dep. 158:20–159:13). Consequently, Jurek has responded to the motion with evidence demonstrating that contract terms and breach are not matters that can be resolved by the court at this posture.

**2. Jurek Has Time to Proffer Expert Testimony on Damages**

To prevail on her contract claim in the manner contemplated by her pleadings, Jurek also has to have evidence of damages. In seeking summary judgment, Dickinson argues that Jurek cannot prove she sustained any damages because she continued to receive course instruction, educational services, and credits toward graduation during the portion of the Spring 2020 semester that was taught remotely. (Doc. 59, Def. Br. in Supp. at ECF p. 13). Per Dickinson, this is a case where plaintiff "requests the [c]ourt to place a value on the remote educational experience that she did receive during the second half of the Spring semester of 2020 and compare it with the in-person educational experience she would have received had the pandemic not taken place." Id.

The parties request a jury trial. Therefore, it is not the role of the court to quantify Jurek's damages. That is the role of a jury after presumably hearing from the plaintiff and any expert witness proffered by her side in this dispute. It appears that plaintiff proposes to do just this. In response to summary judgment, Jurek's counsel has filed a declaration that his client intends to designate at least one expert witness "to opine, *inter alia*, that college students value campus-based, in-person educational services and are willing to pay more for them than they would for an online-only education." (Doc. 60-1 M. Sampson Decl. ¶ 3). He also indicates that one or more experts "will explain that a valid and accurate methodology exists to calculate the difference in market value between in-person and online educational opportunities . . . offer opinions about at least (a) the estimated price discount for online educational services relative to in person services and (b) the total amount of class-wide breach-of-contract damages." Id. Since plaintiff's expert report deadline is currently set by court order for two weeks after this ruling, (Doc. 56), plaintiff contends that she is unable to fully develop and present all facts justifying her opposition to Dickinson's summary judgment motion. (Doc. 60-1 M. Sampson Decl. ¶ 2).

According to the summary judgment rules, if a non-moving party shows by declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may deny the motion or issue any other appropriate

order.[5] FED. R. CIV. P. 56(d)(1),(3). Under the circumstances, it is appropriate to allow Jurek to do what her lawyer says he intends to do. Thus, the court will deny Dickinson's motion to the extent that it challenges plaintiff's evidence of damages. [6]

---

[5] Plaintiff's complaint also requests an award of "such other and further relief as may be just and proper." (Doc. 1 at ECF p. 20). One jurist in this district has taken the position that prayers for relief like this permit the plaintiff to recover nominal damages if she proves a breach of the contract but no resultant damages. Fagal v. Marywood Univ., No. 3:14-CV-02404, 2017 WL 4540613, at *10 (M.D. Pa. Oct. 11, 2017) (Caputo, J.). At least one other jurist in a sister jurisdiction has permitted late amendment to explicitly add a request for nominal damages, where there was a question as to whether such a request was implicit in "such other relief" language in a plaintiff's complaint. Seaport Glob. Holdings, LLC v. PowerPay, LLC, No. CV 23-1422-KSM, 2025 WL 2213931, at *1–4 and n.2 (E.D. Pa. Aug. 4, 2025) (Marston, J.).

[6] Dickinson raised modification and ratification arguments in two different ways in its briefs. First, in its brief in support of summary judgment, Dickinson argued that plaintiff sustained no damages because she agreed to continue on with remote learning in March 2020. (Doc. 59 at ECF pp. 14–15). Dickinson then substantially altered that argument. In Dickinson's reply brief, the college argued that there was no breach of contract due to a modification. (Doc. 62 at ECF pp. 5–7). By nature of the court's briefing rules, Jurek has not had an opportunity to counter such arguments. Issues raised for the first time in reply briefs are generally deemed waived. See Williams v. City of Pittsburgh Pub. Sch. Dist., 742 F. Supp. 3d 464, 468, n.4 (W.D. Pa. 2024); Javitz v. Luzerne County., 616 F. Supp. 3d 394, 407 (M.D. Pa. 2022), aff'd sub nom. Davis v. Luzerne County., No. 22-2519, 2023 WL 5842299 (3d Cir. Sept. 11, 2023); Brand Design Co., Inc. v. Rite Aid Corp., 623 F. Supp. 3d 526, 537 n.3 (E.D. Pa. 2022). The court finds that Dickinson has waived the reply brief form of its modification and ratification arguments. Even still, "[a] contract, either oral or written, may be modified by a subsequent agreement which is supported by legally sufficient consideration, or a substitute therefor, and meets the requirements for contract formation." Shedden v. Anadarko E. & P. Co., L.P., 136 A.3d 485, 490 (Pa. 2016) (citations omitted). The burden of proving a substitute contract is on the defendant. Nernberg & Laffey v. Patterson, 601 A.2d 1237, 1239 (Pa. Super. Ct. 1991). Dickinson has, at no time, presented evidence of consideration or a substitute that was any different from the payment of tuition and fees by the plaintiff at the beginning of the semester for an in-person, on-campus college experience.

### 3. Summary Judgment Must Be Entered on Jurek's Unjust Enrichment Claim

Jurek advances an unjust enrichment claim alongside her breach of implied contract claim. Dickinson argues that judgment should be entered on the unjust enrichment claim because no party disputes the existence of some contract between the parties, whether express or implied. (Doc. 59, Def. Br. in Supp. at ECF p. 16). Jurek argues that because Dickinson believes that the parties' relationship is governed by an express contract that it is premature to enter judgment on the unjust enrichment claim. (Doc. 60 at ECF pp. 21–23). Resolution of this issue is more complicated.

Under Pennsylvania law, "the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between parties is founded on a written agreement or express contract." Schott v. Westinghouse Elec. Corp., 259 A.2d 443, 448 (Pa. 1969) (citing Third Nat. Bank & Tr. Co. of Scranton v. Lehigh Valley Coal Co., 44 A.2d 571, 574 (Pa. 1945); Twp. of Horsham v. Weiner, 255 A.2d 126, 130–31 (Pa. 1969); Wingert v. T. W. Phillips Gas & Oil Co., 157 A.2d 92, 94 (Pa. 1959)); see also Birchwood Lakes Cmty. Ass'n v. Comis, 442 A.2d 304, 308 (Pa. Super. Ct. 1982) ("A quasi contract, also referred to as a contract implied in law imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement when one party receives an unjust enrichment at the expense of another.")

"An express contract is formed when the terms of an agreement are declared by the parties either verbally or in writing." Braun, 24 A.3d at 942. But "even where no such clear declaration exists, a contract may nevertheless be implied-in-fact." Id.

Consequently, in Hickey, the Third Circuit articulated Pennsylvania law as follows: "Pennsylvania law bars unjust enrichment claims when a contract—express or implied—governs the parties' relationship[.]" 81 F.4th at 315 (citing Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987)).[7]

The parties agree that some type of contract governed the parties' relationship, express according to Dickinson and implied-in-fact according to Jurek. In either event, plaintiff's unjust enrichment claim lacks viability based on this agreement. Summary judgment will be granted in favor of Dickinson on the plaintiff's unjust enrichment claim.

---

[7] To the extent that Jurek's brief may be read to indicate a conflict between Pennsylvania unjust enrichment law and Hickey, (Doc. 60, Pl. Br. in Opp. at ECF pp. 22–23 and nn. 26–27), this district court is bound by Hickey. See United States v. Mitlo, 714 F.2d 294, 298 (3d Cir. 1983) ("[P]recedents set by higher courts are conclusive on courts lower in the judicial hierarchy and leave to the latter no scope for independent judgment or discretion.") (citation and quotation marks omitted); Reiser v. Residential Funding Corp., 380 F.3d 1027, 1029 (7th Cir. 2004) ("A decision by a state's supreme court terminates the authoritative force of our decisions interpreting state law[.]"); Galvez v. Midland Credit Mgmt., Inc., No. 25-CV-14985 (MEF)(LDW), ___ F. Supp. 3d ___, 2026 WL 2240595, at *11 (D.N.J. Aug. 4, 2026) (Farbiarz, J.) ("The Third Circuit's decisions are binding . . . And as to predictions of [state] law, too.").

## Conclusion

For the reasons set forth above, Dickinson's motion for summary judgment will be granted in part and denied in part. The motion will be granted as to Jurek's unjust enrichment claim and denied as to Jurek's breach of implied contract claim. Pursuant to a scheduling order previously issued by the court, Jurek's expert reports and motion for class certification are due in two weeks. An appropriate order follows.

**Date:** 9/24/26

**JUDGE JULIA K. MUNLEY**
**United States District Court**